# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2012

No. 11-60246

Lyle W. Cayce
Clerk

WEN HUA LIN,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A079 103 952

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Petitioner Wen Hua Lin ("Lin"), a native and citizen of the People's Republic of China ("China"), petitions this court for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The petition is DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60246

## FACTS AND PROCEDURAL BACKGROUND

In October 2000, Lin traveled from China to Mexico and subsequently entered the United States without documentation. On April 1, 2001, Lin was issued a notice to appear charging him with removability on the basis that he was an alien present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). He conceded removability and requested asylum, withholding of removal, and protection under the CAT.

In May 2002, Lin received a hearing before an IJ and testified that in 1999 he married a woman in China but was not permitted to record the marriage because he was 21 years old and thus too young to marry under Chinese law. His wife became pregnant, and the local authorities discovered the pregnancy. Because it was illegal for the couple to have a baby as they were not legally married, family planning officials arrested Lin's wife twice. Upon the second arrest, family planning officials took Lin's wife from the couple's home and forced her to have an abortion. When Lin arrived home and learned what had happened, he and some friends went to the family planning office to ask the chairman where he could find his wife. The chairman explained that Lin's wife was pregnant, the pregnancy was illegal, and it was "normal" for her to have an abortion. Lin then began to argue with the chairman. During their argument, a person not associated with Lin arrived and attempted to fight the chairman. Lin tried to intervene, but the chairman shocked Lin with an electric baton. Lin, his friends, and the other person were detained, but later escaped through a window. Thereafter, Lin went into hiding with two of his friends. Eventually, Family Planning Officials ("FPOs") arrested Lin's friends, but could not find Lin. Lin's family informed him that the FPOs and the police had been looking for him everywhere.

No. 11-60246

Lin explained that the FPOs sent him a notice ordering him to be sterilized. When he failed to have the surgery, the FPOs assessed a 10,000 Chinese Yuan ("yen") fine.[1] Because Lin's family did not have the money to pay the fine, the Chinese government refused to allocate farming land to them. Lin testified that after the incident at the family planning office, he traveled to the Republic of Suriname[2] ("Suriname") for several months to work and then returned to China. Lin then borrowed $60,000 to pay a "snakehead"[3] to arrange his travel to Mexico in order to cross the United States-Mexico border into the United States. Although he was not arrested upon returning to China from Suriname, Lin explained that he feared being returned to China because the police would arrest him and have him sterilized.

On cross-examination, the Government asked Lin of the whereabouts of the notice ordering him to undergo sterilization procedures. Lin responded that he gave the notice to his attorney. His attorney explained that he had the document translated, along with other new documents,[4] but neglected to file them with the immigration court. The Government objected to the documents being admitted into evidence. The IJ sustained the objection on the ground that the Government did not have an opportunity to review the documents. Instead, the IJ entered these documents into the record only for identification purposes.

---

[1] Under the current exchange rate, 10,000 Chinese Yuan is equal to approximately $1,590 U.S. Dollars.

[2] The Republic of Suriname is a country in northern South America.

[3] A "snakehead" is a smuggler. *See Chen v. Gonzales*, 470 F.3d 1131, 1133 (5th Cir. 2006).

[4] The other new documents included a letter from Lin's wife explaining the circumstances surrounding the abortion, and letters from Lin's friends that explained Lin's fear that he would be sterilized upon his return to China.

No. 11-60246

On May 20, 2002, the IJ denied Lin relief on the basis that his asylum application was not timely and that he was not entitled to withholding of removal or relief under the CAT because he was not credible. Lin then appealed the IJ's decision to the BIA. The BIA, however, ruled that the IJ's timeliness analysis was based in part on an erroneous factual determination and that the IJ's credibility determination was improper. Thus, the BIA remanded the case explaining that "the parties will be allowed to submit further evidence regarding the respondent's applications for relief."

On remand, Lin submitted an updated State Department Country Report on China and a copy of 8 U.S.C. § 1101(a)(42)(B), but nothing else. Although the IJ considered all of the evidence submitted by Lin, including the notice ordering him to be sterilized and other evidence entered for identification purposes, the IJ denied Lin's application for asylum, determining that Lin was not credible based on discrepancies between Lin's evidence and the Country Reports, and that Lin had not established that it was more likely than not that he would be tortured if returned to China. The IJ also concluded that the asylum application was not timely. Lin then appealed the IJ's decision.

The BIA found that the asylum application was timely, but affirmed on the ground that Lin was ineligible for relief based on his wife's forced abortion because he stated on his asylum application that he was single. Thereafter, Lin petitioned this court for review. On December 22, 2006, we granted the Government's unopposed motion to remand the proceedings to the BIA. The BIA, in turn, remanded the proceedings to the IJ to reexamine Lin's claims in light of *Matter of S-L-L*, 24 I. & N. Dec. 1 (BIA 2006). In its order, the BIA explained further that the IJ's earlier adverse credibility determination was unsupported by the record and noted that new evidence regarding country conditions and forensic testing of other evidence might be relevant on remand.

4

No. 11-60246

At the June 25, 2007, hearing, Lin submitted a new Country Report, but did not enter into evidence the notice ordering him to be sterilized, and it does not appear that forensic analysis was performed on any of the evidence. Although the IJ determined Lin to be credible, it issued a new opinion denying Lin relief. The IJ found it "difficult to believe" that Chinese officials ordered Lin to be sterilized, explaining that such an order appeared contrary to Chinese law and that Lin submitted no background evidence of men in his situation being ordered sterilized. The IJ noted that Lin did not submit evidence corroborating this portion of his claim, his wife did not mention sterilization in her letter, and the other letters explained that Lin feared sterilization, but did not say that Lin was ordered to be sterilized. The IJ observed that the purported notice ordering Lin to be sterilized along with other documents were entered into the record but not admitted into evidence; thus, the IJ declined to consider these documents. Moreover, the IJ noted there was no evidence that authorities attempted to sterilize Lin's wife. Despite these concerns, however, the IJ accepted Lin's assertion that he was ordered sterilized.

Ultimately, the IJ determined that Lin had not been the victim of past persecution. To the extent Lin claimed past persecution on the basis of his wife's forced abortion, the IJ determined that Lin's claim failed pursuant to *Matter of J-S-*, 24 I. & N. Dec. 520 (A.G. 2008). The IJ went on to find that Lin resisted the family planning policies by going to the family planning office to protest the forced abortion, but determined that the harm he suffered – an electric shock from the chairman's baton and a temporary confinement – did not amount to persecution. Although the IJ found that a notice evincing the Chinese Government's intentions to sterilize a person would give the person reasonable cause to fear that he would be sterilized, the IJ determined that Lin would be able to return to China and relocate to avoid sterilization, and that it

5

No. 11-60246

would be reasonable to require him to do so.  The IJ also denied withholding of removal and CAT protection on the basis that Lin had not established that it was more likely than not that he would be sterilized or tortured.

Lin then filed his notice of appeal with the BIA, challenging the IJ's decision on the following grounds: (1) the IJ incorrectly concluded that Lin did not suffer past persecution and did not have a well-founded fear of future persecution on the basis that he was detained for resisting family planning policies and faces sterilization upon his return; (2) the IJ's decision was contrary to Congressional intent; and (3) any other ground.  Lin's three-page brief to the BIA, however, argued only that Lin was "betrayed by the system" because changes in the law that occurred while his application was pending made him ineligible for relief.

The BIA agreed with the IJ and dismissed the appeal.  It first determined that Lin was not entitled to relief on the basis of his wife's forced abortion.  The BIA went on to agree with the IJ's decision to deny Lin's asylum application for failing to meet his burden of proof.  According to the BIA, the electric shock and brief detention did not amount to persecution and thus Lin had not established that he suffered past persecution.  It also determined that Lin had not shown a well-founded fear of future persecution because he failed to submit reasonably available corroborating evidence to support the claim.  Specifically, the BIA noted that Lin did not submit a copy of the notice requiring that he report for sterilization or any background evidence that Chinese authorities sterilized men who attempted to, but ultimately did not, have a child before the age when they were permitted to marry.  The BIA also noted that Lin's wife did not mention the threat of sterilization in her letter.  Finally, the BIA determined that Lin had not demonstrated that the fine imposed constituted a severe economic disadvantage.  Because Lin could not meet the burden of proof

No. 11-60246

required to establish eligibility for asylum, the BIA reasoned, he could not demonstrate eligibility for withholding of removal or relief under the CAT.  Lin timely petitioned this court for review.

## STANDARD OF REVIEW

Because the BIA made its own determination and did not adopt the IJ's order, we review only the BIA's decision and address the IJ's decision only to the extent it impacted the BIA's reasoning.  *See Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002).  We "review factual findings of the BIA and IJ for substantial evidence, and questions of law de novo, giving 'considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer.'"  *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007) (quoting *Fonseca-Leite v. I.N.S.*, 961 F.2d 60, 62 (5th Cir. 1992)).  Only where the evidence compels a contrary result will we reverse those factual findings.  *Id.* We will not disturb the BIA's determination that an alien does not have a well-founded fear of persecution unless "a reasonable fact finder would have to conclude that the requisite fear of persecution existed." *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996) (internal quotation marks and citation omitted).  The BIA, however, may not overturn an IJ's factual findings "simply because the [BIA] would have weighed the evidence differently or decided the facts differently had it been the factfinder."  Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,889 (Aug. 26, 2002) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).  The BIA may overturn an IJ's factual findings only if they are clearly erroneous. *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234-35 (5th Cir. 2009).

Whether the BIA applied the correct standard of review is reviewed de novo. *Id.* at 235.  We further review the BIA's decision to ensure that the alien

7

No. 11-60246

received a full and fair consideration of the facts. *Abdel-Masieh*, 73 F.3d at 585. Though the BIA need not catalogue every piece of evidence, its decision must reflect that it meaningfully considered the relevant substantial evidence in support of the alien's claims. *Id.*

## DISCUSSION

Initially, we must consider the question of whether we have jurisdiction to entertain Lin's appeal. The Government argues that we lack jurisdiction because Lin failed to challenge the IJ's determinations that he had not established that he suffered past persecution or would be subjected to future persecution if returned to China. In fact, the Government argues that "Lin conceded his ineligibility before the [BIA]; he did not argue his cumulative experiences rose to the level of persecution; he did not argue the fine imposed upon his family presented a severe economic disadvantage; nor did he maintain likely torture."

As always, we have "jurisdiction to determine our own jurisdiction." *Omari v. Gonzales*, 419 F.3d 303, 306 (5th Cir. 2005) ("*Omari I*"). Although we generally have jurisdiction to review final orders of removal, "under 8 U.S.C. § 1252(d), we 'may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.'" *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009) ("*Omari II*"). If a petitioner fails to raise an issue before the BIA, the petitioner has failed to exhaust his administrative remedies. *See Heaven v. Gonzales*, 473 F.3d 167, 177 (5th Cir. 2006). "A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim." *Omari II*, 562 F.3d at 318-19. Therefore, we lack jurisdiction to review issues the alien has not exhausted by presenting to the BIA.

In Lin's notice of appeal to the BIA, Lin challenged the IJ's decision on the following grounds: (1) the IJ incorrectly concluded that Lin did not suffer past persecution and did not have a well-founded fear of future persecution on the basis that he was detained for resisting family planning policies and faces sterilization upon his return; (2) the IJ's decision was contrary to Congressional intent; and (3) any other ground. Despite Lin's failure to brief these issues, the BIA addressed them.

Recently, in *Lopez-Dubon v. Holder*, 609 F.3d 642 (5th Cir. 2010), we addressed "whether an issue not properly raised by a petitioner in immigration proceedings but [was] nevertheless addressed on the merits by the BIA may be considered by this court." We determined that "'[i]f the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue as far as the agency is concerned and that is all that [8 U.S.C.] § 1252(d)(1) requires to confer our jurisdiction.'" *Id.* at 644 (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1119 (10th Cir. 2007)).

The Government attempts to distinguish *Lopez-Dubon* from this case by arguing that the alien in *Lopez-Dubon* raised the unexhausted issue before the BIA in a motion to reconsider, whereas Lin failed to mention the issues he now raises in his brief or any later motion. The Government further attempts to distinguish *Lopez-Dubon* by arguing that Lin conceded that he was not entitled to relief.

However, in deciding *Lopez-Dubon*, we reasoned that "the purpose of the statutory exhaustion requirement is to allow the BIA 'the opportunity to apply its specialized knowledge and experience to the matter' and to 'resolve a controversy or correct its own errors before judicial intervention.'" *Id.* (quoting *Sidabutar*, 503 F.3d at 1122). In our view, nothing in *Lopez-Dubon* suggests that its holding hinged upon the motion for reconsideration. While Lin failed

No. 11-60246

to argue the issues before the BIA in his brief or any later motion, the purpose of the statutory exhaustion requirement has been met.  Furthermore, Lin did concede he was not entitled to relief, but read in context with the rest of his brief, his statement only related to relief based exclusively on his spouse's forced abortion.  Lin conceded relief based exclusively on his spouse's forced abortion because a change in the law had occurred during the lengthy proceedings.  *See Matter of J-S-*, 24 I. & N. Dec. 520, 527-32 (Att'y Gen. 2008) (Attorney General ruled spouses of Chinese victims of forced abortions were no longer entitled to relief based solely on the forced abortion.)

Accordingly, we have jurisdiction to consider Lin's appeal.

I.    *Whether the BIA's determination that Lin failed to provide corroboration was proper.*

An alien seeking asylum has the burden of establishing that he is a "refugee." 8 C.F.R. § 1208.13(a).  A person is a "refugee" if he has suffered past persecution or has a well-founded fear of future persecution.  8 C.F.R. § 1208.13(b).  To establish a well-founded fear of future persecution, an applicant must show a "reasonable probability" of suffering persecution if returned to his home country.  8 C.F.R. § 1208.13(b)(2)(i)(B).  A sufficient fear of persecution is presumed if the applicant has suffered persecution in the past on account of a protected ground.  *Zhu*, 493 F.3d at 596.  An applicant with a well-founded fear that he will undergo a forced sterilization procedure has a well-founded fear of persecution on the basis of his political opinion.  *Matter of J-S-*, 24 I. & N. Dec. at 534; *see also* § 1101(a)(42)(A).  Moreover, an applicant who does not have a well-founded fear of being forced to undergo a sterilization procedure can nonetheless show that he suffered persecution or has a well-founded fear of future persecution based on resistance to China's family planning policies. *Matter of J-S-*, 24 I. & N. Dec. at 534.

No. 11-60246

For an alien, like Lin, who filed an application for relief prior to the effective date of the REAL ID Act of 2005, his testimony alone and without corroborating evidence may be sufficient to meet his burden of proof to show eligibility for asylum, withholding of removal, or CAT protection. *Abdel-Masieh*, 73 F.3d at 584.  However, even a credible applicant may be required to provide corroborating evidence "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim." *In re S-M-J-*, 21 I. & N. Dec. 722, 725 (BIA 1997); *see also Rui Yang v. Holder*, 664 F.3d 580, 584-86 (5th Cir. 2011).  Where an alien fails to come forward with reasonably available corroborating evidence, he can be found to have failed to meet his burden of proof.  *In re S-M-J-*, 21 I. & N. Dec. at 725-26.

Here, Lin's claim – that he established a well-founded fear of future persecution – is not supported by sufficient evidence.  Specifically, Lin claims that the BIA erred in finding that he did not meet his burden of proof because it failed to consider (1) the notice requiring Lin to submit to sterilization procedures; (2) his testimony; and (3) other evidence that he was targeted for sterilization for the incident at the family planning office.  Lin argues that by not considering the notice directing him to report for sterilization procedures, the BIA erred in determining that he would not be subjected to future persecution.  Lin concedes that the notice requiring him to report for sterilization procedures was marked only for identification purposes in the original hearing in May 2002 before the IJ, but that the case was remanded numerous times for the parties to supplement the record.  Thus, Lin claims, the BIA misread the record, which caused the error, and now compels remand for proper consideration of the evidence. The Government contends, however, that the notice requiring Lin to report for sterilization procedures was never properly admitted into evidence and that he had other opportunities on remand

11

to supplement the record accordingly. Because he failed to properly submit the evidence into the record, the Government argues, the BIA did not err in failing to consider it. Thus, the question becomes whether the notice requiring Lin to report for sterilization procedures was properly before the BIA for its consideration.

According to the record, Lin attempted to introduce into evidence a copy of the notice, a certified translation thereof and a number of other Chinese documents and their translations, but the Government objected based on grounds that the documents were not timely submitted.[5] The IJ sustained the Government's objection, and marked the documents for identification purposes only.[6] The IJ then determined that Lin was not entitled to relief. Lin appealed. The BIA determined that the case should be remanded to the IJ, and explicitly stated, "[o]n remand, the parties will be allowed to submit further evidence regarding the respondent's application for relief." Despite this opportunity to properly submit into evidence the notice requiring Lin to be sterilized and other documents, Lin's counsel made no mention of those documents at the IJ hearing on February 9, 2004.

On June 5, 2007, the IJ held a hearing to address the parties' arguments in light of *Matter of S-L-L-*, *supra*. At this hearing, Lin's counsel supplemented the record with evidence,[7] but did not attempt to properly admit into evidence the notice requiring Lin to be sterilized and other documents. On July 7, 2008,

---

[5]   Lin's counsel attempted to admit the documents during the Government's cross-examination of Lin. However, the IJ allowed the Government to proceed with cross-examination and stated that Lin may raise his issue on redirect examination.

[6]   While the documents will hereinafter be referred to collectively as the "I.D. documents," it is noted that the I.D. document primarily at issue is the notice requiring Lin to report for sterilization procedures.

[7]   The evidence admitted here was a copy of the updated Country Reports on China issued by the United States Department of State.

No. 11-60246

the IJ issued its decision denying Lin relief.  However, the IJ noted that the notice requiring Lin to be sterilized and the other documents were not considered for purposes of its decision.  Again, Lin appealed the IJ's decision. Remarkably, Lin's counsel did not take issue with the fact that the IJ had not considered the notice requiring Lin to be sterilized and the other documents. On March 18, 2011, the BIA issued its final order dismissing Lin's appeal.  Lin then petitioned this court for review of the BIA's decision and finally took issue with the IJ's and BIA's failure to consider the I.D. documents.

The essence of Lin's claim is his assertion that the BIA did not consider the notice to report for sterilization that was properly before the court.  Lin states:

> At the May 22, 2002 original hearing before the IJ, the IJ only marked this Notice for 'identification only' as it was not filed in a timely fashion. However, proceedings were remanded several times for among other things, to afford the parties to supplement the record.  Thus, the Notice was properly in the record . . . .

Interestingly, Lin does not state that he, or anyone else for that matter, took an affirmative step to properly admit into evidence the notice requiring him to be sterilized.  Indeed, the notice was not admitted into evidence and was only marked for identification purposes.

Furthermore, we generally review the BIA's decision "'procedurally' to ensure that the complaining alien has received full and fair consideration of all circumstances that give rise to his or her claims." *Adjonke v. Mukasey*, 255 F. App'x 914, 915 (5th Cir. 2007) (quoting *Abdel-Masieh*, 73 F.3d at 585). However, we do not require that the BIA "address evidentiary minutiae or write any lengthy exegesis, [but] its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims."  *Id.* (alternation in orignal).

No. 11-60246

Ultimately, Lin failed to properly submit evidence corroborating his claim that he will face future persecution if returned to China. Lin had ample opportunity to properly admit the notice, but did nothing. Therefore, the BIA was not required to consider the documents that were not in evidence.

II.   *Whether the BIA's determination that Lin did not suffer past persecution was supported by substantial evidence.*

Lin claims that the BIA improperly rejected his claim that the harm he suffered in China amounted to past persecution. He contends that the BIA failed to consider the cumulative effects of: (1) his wife's abortion and its psychological effect on him; (2) the electric shock from the chairman's baton and brief detention; (3) the fine of 10,000 yen and the deprivation of farming land that resulted from the failure to pay the fine; (4) being forced into hiding after the altercation at the family planning office; and (5) being targeted for forced sterilization.

An applicant may establish past persecution on the basis of the cumulative effects of multiple incidents even if each incident, considered in isolation, would not rise to the level of persecution. *Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004). However, persecution encompasses only extreme conduct and "does not include every sort of treatment our society regards as offensive." *Id.* at 187 n.4 (quoting *Naqouiko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003). Moreover, in an unpublished opinion, we determined that an applicant who challenged his wife's forced abortion, was fired from his job, detained for two days, subjected to coercive interrogation, and some physical abuse for which he did not seek medical attention did not suffer persecution. *Bing Shun Li v. Holder*, 400 F. App'x 854, 856, 858-59 (5th Cir. 2010); *see also Rojas v. I.N.S.*, 937 F.2d 186, 189-90 (5th Cir. 1991) (affirming denial of asylum to applicant who was arrested, beaten, tortured, and later fired from his job and denied other employment by the Government); accord *Dao Qing Ye v. Att'y Gen.*

14

No. 11-60246

*of the United States*, 395 F. App'x 844, 848 (3d Cir. 2010) (rejecting applicant's claim that cumulative impact of being fined, detained, beaten, and having his property seized after wife was sterilized against her will rose to the level of persecution).

In this case, the cumulative effect of the incidents surrounding Lin's wife's forced abortion does not amount persecution. Lin was shocked, but did not receive medical attention. He was detained, but only for three to four minutes. Lin's family was fined and their failure to pay resulted in the loss of their farming land, but Lin did not testify or explain in his asylum application how this was an economic hardship or the impact that the loss of farming had on his family. Lin could have established past persecution to the extent that he was threatened with forced sterilization. *Zhu*, 493 F.3d at 600. However, because the BIA required him to corroborate this claim and he did not, Lin cannot establish that this threat rose to the level of past persecution. Thus, Lin failed to carry his burden of establishing past persecution from the cumulative effect of the above incidents.

## CONCLUSION

For the forgoing reasons, we AFFIRM the decision of the BIA.